UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **FREDERICK J. GREDE, not individually but as** <br> **Liquidation Trustee of the Sentinel Liquidation Trust,** <br>      **Plaintiff,** <br>    v. <br> **FCSTONE, LLC,** <br>      **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) | No. 09 C 136 <br><br> Judge Rebecca R. Pallmeyer |
| **PENSON FINANCIAL FUTURES, INC. and** <br> **PENSON FUTURES f/k/a PENSON GHCO,** <br>      **Defendants.** | ) ) ) ) | No. 09 C 101 |
| **IFX MARKETS, INC. and IPGL, LTD.** <br>      **Defendants.** | ) ) ) | No. 09 C 115 |
| **FARR FINANCIAL, INC.,** <br>      **Defendant.** | ) ) ) | No. 09 C 120 |
| **CADENT FINANCIAL SERVICES,** <br>      **Defendant.** | ) ) ) | No. 09 C 127 |
| **COUNTRY HEDGING, INC.,** <br>      **Defendant.** | ) ) ) | No. 09 C 130 |
| **VELOCITY FUTURES, LP,** <br>      **Defendant.** | ) ) ) | No. 09 C 135 |
| **AMERICAN NATIONAL TRADING CORP.,** <br>      **Defendant.** | ) ) ) | No. 09 C 137 |
| **ABN AMRO CLEARING CHICAGO LLC** <br> **f/k/a FORTIS CLEARING AMERICAS, LLC,** <br>      **Defendant.** | ) ) ) ) | No. 09 C 138 |

## **MEMORANDUM ORDER**

These nine cases all arise from the decade-old bankruptcy of Sentinel Management Group, Inc. The facts surrounding Sentinel's collapse have been described in more than a dozen published opinions dating back to 2010. In short, Sentinel's managers failed to segregate client funds and securities in violation of federal law, regulations, and customer agreements. Instead, Sentinel pledged its clients' funds as collateral for loans from the Bank of New York ("BONY"), which Sentinel used to purchase even more securities on its own "house"

account for the benefit of corporate insiders. When the financial markets began to crumble in the summer of 2007, Sentinel was unable to both repay the BONY loan and return its clients' money to them. Sentinel declared bankruptcy on August 17, 2007.

The Defendants are all financial institutions and former Sentinel clients assigned to its "SEG 1" customer group (collectively, "the SEG 1 Defendants"). The SEG 1 Defendants consist of FCStone, LLC (Case No. 09-cv-136); Penson Financial Futures, Inc. and Penson Futures f/k/a Penson GHCO (together, No. 09-cv-101); IFX Markets, Inc. and IPGL, Ltd (together, No. 09-cv-115); Farr Financial, Inc. (No. 09-cv-120); Cadent Financial Services (No. 09-cv-127); Country Hedging, Inc. (No. 09-cv-130); Velocity Futures, LP (No. 09-cv-135); American National Trading Corp. (No. 09-cv-137); ABN AMRO Clearing Chicago LLC f/k/a Fortis Clearing Americas, LLC (No. 09-cv-138).[1] Plaintiff Frederick J. Grede, is the Liquidation Trustee administering Sentinel's remaining assets. Soon after his appointment, the Trustee filed essentially identical five-count complaints against all of the SEG 1 Defendants seeking: the avoidance and recovery of various post-petition transfers under 11 U.S.C. § 549 (Count I); the avoidance and recovery of preferential pre-petition transfers under 11 U.S.C. § 547 (Count II); a declaratory judgment as to the ownership of reserve funds ("the Property of the Estate Reserves" or "the Reserves") held by the Trustee under the confirmed bankruptcy plan ("the Plan") (Count III); unjust enrichment (Count IV); and reduction or disallowance of claims (Count V).[2] (*See* Second Amended Complaint in *Grede v. FCStone, LLC*, No. 09-cv-136 [99]

---

[1] Two further cases, *Grede v. Rand Financial Services*, No. 09-cv-128, and *Grede v. Crossland, LLC*, No. 09-cv-140, were also included in pool of SEG 1 Defendants awaiting a final disposition in the test case. In both cases, the parties agreed to a stipulated dismissal with prejudice after briefing on their respective motions for judgment had concluded. (Stipulated Dismissal with Prejudice [153] in *Grede v. Rand Financial Services*, No. 09-cv-128; Stipulated Dismissal with Prejudice [162] in *Grede v. Crossland, LLC*, No. 09-cv-140.) The court dismissed the Trustee's complaint against Rand and closed the case on January 2, 2018. (Order [154] in *Grede v. Rand Financial Services*, No. 09-cv-128.) The complaint against Defendant Crossland, LLC, is dismissed today. (Order [163] in *Grede v. Crossland, LLC*, No. 09-cv-140.)

[2] Grede's complaint against Penson Financial Futures, Inc. ("PFFI") and Penson Futures f/k/a Penson GHCO ("Penson Futures," and collectively with PFFI, "the Penson

2

("FCStone Complaint"), 26–31.) All the SEG 1 Defendants raised the same core defenses in opposition to these claims.

In light of the identical claims and common factual and legal issues, then-presiding Judge Zagel decided to proceed with the SEG 1 litigation on a test-case basis. The parties selected *Grede v. FCStone, LLC*, No. 09-cv-136, as a test case for all the SEG 1 cases. After multiple appeals and reversals by the Seventh Circuit, all five counts in the Second Amended Complaint [99] have been resolved in FCStone's favor. It now falls on this court to enter judgment as to all the SEG 1 Defendants pursuant to the Seventh Circuit's recent decision in *Grede v. FCStone, LLC*, 867 F.3d 767 (7th Cir. 2017) ("*FCStone II*").

## **PROCEDURAL HISTORY**

The outcome of the test case has swung wildly with each new decision. At a bench trial, Judge Zagel originally found in favor of the Trustee on Counts I, II, III, and V—dismissing only the Trustee's unjust enrichment claim in count IV as preempted by federal bankruptcy law. *Grede v. FCStone, LLC*, 485 B.R. 854, 888–890 (N.D. Ill. 2013). Defendant FCStone appealed, and the Seventh Circuit reversed the judgments in favor of the Trustee. *Grede v. FCStone, LLC*, 746 F.3d 244, 260 (7th Cir. 2014) ("*FCStone I*"). The panel found that the post- and pre-petition transfers underlying Counts I and II, respectively, fell within "safe harbors" in the Bankruptcy Code and were not subject to avoidance. *Id.* at 251. This decision had the further effect of rendering Count V (seeking disallowance of certain claims) moot. Absent any

---

Defendants") is the lone exception. (Second Amended Complaint [30] in *Grede v. Penson,* No. 09-cv-101 ("*Penson* Complaint").) The Trustee asserts seven counts against Penson. These counts are duplicate claims seeking the avoidance of post-petition transfers and pre-petition preferences made to Pension Futures as well as PFFI. The Complaint's numbering is necessarily changed as a result. Counts I and III in the Penson Complaint correspond to Count I in the complaints against the other SEG 1 Defendants, and Counts II and IV in the Penson Complaint correspond to Count II in the other complaints. Counts V–VII in the Penson Complaint correspond to Counts III–V in the other SEG 1 complaints. (*See* Penson's Memorandum of Law in Support of a Motion for Entry of Judgment on Counts I-VII of the Penson Complaint [66] ("Penson Mot."), 2 n.2.) In the interest of clarity, this order will use the FCStone Complaint as a template for the complaints filed against each of the SEG 1 Defendants. All references to the FCStone Complaint apply equally to the analogous portions of the Penson Complaint.

avoidable transfers to FCStone, the Trustee no longer had any legal grounds to disallow FCStone's claims against the estate under 11 U.S.C. § 502(d). *See Grede v. FCStone, LLC*, 556 B.R. 357, 366 (N.D. Ill. 2016) ("*FCStone Remand*"); 11 U.S.C. § 502(d) (directing courts to disallow any claim by an entity that received and failed to return an avoidable preference).

The first appeal did not specifically address the appropriate disposition of the Reserves, the subject of Count III. *See FCStone II*, 867 F.3d at 774 (discussing the scope of *FCStone I*). The Reserves had been created by the approved Plan and involved four separate pots of money: one for each of customer SEGs 1, 2, and 3, and another for disputed claims arising under Section 7.20(b) of the Plan ("the Section 7.20(b) Disputed Claims Reserve"). *FCStone Remand*, 556 B.R. at 363. The Reserves are the focus of an ongoing dispute over whether certain funds are properly considered the property of the estate, or instead customer property held in trust for the benefit of specific clients. The Trustee alleged that the Reserve funds were property of the estate, and thus owed to all Sentinel's creditors on a *pro rata* basis. *FCStone II*, 867 F.3d at 779. The SEG 1 Defendants countered that the Reserves were comprised of funds protected by statutory trusts in favor of each of the SEG 1 Defendants and should only be distributed *pro rata* among themselves. *Id*. The SEG 1 Defendants all objected to an early version of the Plan which treated the funds as property of the estate, so the final Plan kept those disputed funds in reserve pending judicial resolution. *Id*. at 771.

The money for these Reserves came from a last-minute sale of securities that Sentinel made to a financial firm called Citadel the day before Sentinel filed for bankruptcy. *FCStone Remand*, 556 B.R. at 361. Under the approved Plan, $15.6 million in proceeds of this sale were held in the SEG 1 Reserve, along with a further $4.9 million in proceeds from late-settling securities and other liquidations. *FCStone II*, 867 F.3d at 778–79. Accounting for accrued interest, the balance in the SEG 1 Reserve account stood at $24,626,984 as of July 31, 2017. (Reserve Account Summary, Ex. A to FCStone. LLC's Motion for Entry of an Order Directing the Trustee to Pay FCStone, LLC its *Pro Rata* Share of the Reserves [317] in *Grede v. FCStone*,

4

No. 09-cv-136 ("FCStone Mot.").)  The Section 7.20(b) Disputed Claims Reserve consists of amounts withheld from distributions the Trustee made to other creditors after the Plan was approved. *FCStone II*, 867 F.3d at 790.  It "capture[s] the pro rata portions of litigation recoveries and similar distributions that SEG 1 Objectors would have received had the parties agreed up front that the Citadel sale proceeds were SEG 1 trust property[.]" *Id*.  The balance of the Section 7.20(b) Disputed Claims Reserve is $4,567,042. (Reserve Account Summary.)

On remand, Judge Zagel entered judgment in favor of Defendant FCStone on Counts I, II, IV, and V, consistent with the Seventh Circuit's decision in *FCStone I*. *FCStone Remand*, 556 B.R. at 366.  Judge Zagel noted, however, that the Seventh Circuit had not reversed his ruling on Count III, and he therefor reaffirmed his original judgment on that count in favor of the Trustee. *Id*. at 363.  He noted that the SEG 1 and SEG 3 customers were both protected by statutory trusts, and concluded that "equity prevent[ed] [the court] from favoring one statutory trust claim over another." *Id*. at 365.  Furthermore, Judge Zagel believed any attempt to trace customer funds would be difficult, "if not impossible," given Sentinel's extensive comingling across different accounts. *Id*.  In *FCStone I*, the Seventh Circuit had proposed that courts faced with competing statutory trust claimants should "require trust claimants to trace without the benefit of tracing conventions, but [ ] place trust claimants who fail to trace in a class ahead of at least unsecured creditors, giving them priority in bankruptcy proceedings."  746 F.3d at 259.  Judge Zagel found this rule inapplicable, however, because as he saw it "[t]he dispute raised in Count III is [ ] not a dispute between two statutory trust claimants, nor is it a dispute between statutory trust claimants and a pool of unsecured creditors. It is more complicated." *FCStone Remand*, 556 B.R. at 366.  Judge Zagel also stated that the Plan gave him broad discretion to distribute the funds as he saw fit under Section 7.20(c)(i), which stated:

> In the event the Court determines that the property in any of the Property Of The Estate Reserves is not property of the estate, Sections 4.4 and 4.5 of the Plan shall be deemed modified to provide that Customer Property shall be distributed to the rightful owners of such property or to the Estate, as determined by the Court.

5

*Id.* (quoting Fourth Amended Chapter 11 Plan of Liquidation, Section 7.20(c)(i), Ex. 1 to Trustee's Supplemental Objection to FCStone Mot. [330-1] ("Liquidation Plan"), 40.) Judge Zagel interpreted this section as granting him the "discretion to distribute the Reserves to the estate even if the Reserves are found *not* to be property of the estate." *Id.* (emphasis added).

At each step along the way, the Trustee and the SEG 1 Defendants reacted to the most recent decision in the test case by filing motions for judgment in their respective cases. (*See, e.g.,* Motions for Judgment [46, 67, 69, 88, 91, 109] in *Grede v. IFX Markets*, No. 09-cv-115.) On March 28, 2016, Judge Zagel issued a blanket denial of all of these outstanding motions in the cases against the SEG 1 Defendants. (Denial and Stay Order [156] in *Grede v. IFX Markets*, No. 09-cv-115.) He further ordered that any future motions for judgment be stayed "until my [*FCStone Remand* Memorandum Opinion and Order] has been fully appealed and decided, or the time to appeal it has expired." (*Id.*) [3]

On August 14, 2017, the Seventh Circuit reversed Judge Zagel again. This time squarely addressing the Reserves that are the subject of Count III, the panel found that because the SEG 3 defendants had opted out of their trust claims by voting for the Plan and "agree[ing] to be treated as unsecured creditors," the issue of "parallel statutory trusts" was avoided. *FCStone II*, 867 F.3d at 781–83 ("[T]he SEG 1 Objectors alone preserved their right to recover trust property held in reserve, and the plan specifically contemplates that such property may be restored to those customers. SEG 3 customers simply did not preserve a comparable right.") The Seventh Circuit also found that tracing a customer's initial investment to the remaining Reserve funds was not, in fact, impossible, given the "essentially unrebutted" testimony of FCStone's forensic accountant. *Id.* at 784–86. And even if any customer could not actually trace its funds, the panel continued, "it should nevertheless be entitled to rely on reasonable

---

[3] The stay order covered all of the SEG 1 cases except for *Grede v. Penson*, No. 09-cv-101, which was independently stayed by Penson's own bankruptcy. (Suggestion of Bankruptcy [44] and Status Report [56] in *Grede v. Penson*, No. 09-cv-101.)

6

tracing conventions (or 'fictions')." *Id.* at 783. The panel also rejected Judge Zagel's purported wide discretion under the Plan as "lead[ing] to a nonsensical result" wherein a judge could ignore the law. *Id.* The Seventh Circuit ultimately held that the SEG 1 Reserve funds are trust property of FCStone and the other SEG 1 Defendants and directed the district court on remand to disperse the Reserves *pro rata* among the SEG 1 defendants. *Id.* at 771, 784. Based on this decision, the panel instructed this court to order the Trustee to liquidate and disperse the Section 7.20(b) Disputed Claims Reserve to FCStone and the other SEG 1 Defendants as well. *Id.* at 791.

## **DISCUSSION**

Defendant FCStone has already been granted judgment on Counts I, II, IV, and V of the Trustee's Second Amended Complaint. (Judgment Order of 3/30/16 [290] in *Grede v. FCStone*, No. 09-cv-136.) The Seventh Circuit has now directed this court to enter judgment in FCStone's favor on Count III and thereby conclude the case. The amount due to FCStone from either of the Reserve funds is not in dispute, but the parties have been unable to reach an agreement on either the form or substance of the judgment order. (FCStone Mot. ¶ 4.)

The other SEG 1 Defendants' requests for judgment present different challenges. The SEG 1 Defendants seek judgment in their favor on all counts in their respective complaints, based on a theory of collateral estoppel and by virtue of all parties' agreement to treat FCStone's dispute as a test case.

### 1.     **The Test Case:** *Grede v. FCStone, LLC*, **No. 09-cv-136**

Despite the straightforward nature of the remaining dispute, the parties have been unable to submit an agreed order. FCStone believes that any judgment must include two additional terms beyond a simple order directing distribution of its *pro rata* share of the Reserves. First, FCStone wants the district court to enter an order retaining jurisdiction over the dispute to (a) enforce the terms of the judgment order and (b) adjudicate any future issues relating to the distribution of FCStone's share of the Reserves. (FCStone Mot.) Second,

7

FCStone requests that the court enter an injunction directing the Trustee to pay FCStone its share within seven days of the entry of judgment, while reserving FCStone's right to challenge the amount due. (*Id.*) The Trustee describes these provisions as unjustified "bells and whistles" that seek to circumvent the Plan and exceed the Seventh Circuit's mandate. (Trustee's Objection to FCStone Mot. [322], 1.)

This court sees no reason to include either of FCStone's additional terms. FCStone's request that this court retain jurisdiction over future disputes is inconsistent with the language of the confirmed Plan. The Plan states that the Bankruptcy Court retains jurisdiction over "any dispute arising under or related to the implementation, execution, consummation, or interpretation of the Plan and/or Confirmation Order, and the making of distributions hereunder and thereunder[.]" (Liquidation Plan Art. 9.1(f), 42.) As the Seventh Circuit stated regarding this exact same document in *FCStone II*, confirmed plans of reorganization are binding agreements with "consequences that we cannot overlook." 867 F.3d at 781–82 (citing *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002)). Even if the Plan did not say so explicitly, the Bankruptcy Court shepherded the dispute central to all the SEG 1 cases (Sentinel's bankruptcy), approved the Plan, and continued to address Plan-related disputes throughout these proceedings. The parties withdrew the reference in this case to resolve questions concerning specific property of the estate, not to override the Plan entirely. If FCStone had issues with the jurisdictional provisions of the Plan, it should have objected to them at the time. *See Ernst & Young*, 304 F.3d at 755–56.

FCStone's second request is no more convincing. FCStone has not made the requisite showing necessary to support an injunction. Nor has it shown a compelling reason for the seven-day time limit it seeks to impose on the Trustee. FCStone's Proposed Injunctive Order is appears to be the sort of opportunistic piling-on that F.R.C.P. 58 was designed to avoid. *See 11* Wright, Miller, & Kane, *Fed. Prac. & Proc. Civ.* § 2786 (3d ed. 2017) (describing the aims of amendments to Rule 58); *see also Matteson v. United States*, 240 F.2d 517, 519 (2d Cir. 1956)

(cautioning judges against "yielding to counsel" the responsibility of crafting judgments and thereby "accepting the normal excess of detail supplied by zealous advocates in their natural desire to press home all conceivable *ad hoc* advantages from the judgment.") The Seventh Circuit's final directive in the test case was for this court to enter judgment in favor of FCStone and the other SEG 1 Defendants. *See FCStone II*, 867 F.3d at 791. The panel's more detailed language stating that, for example, "the Section 7.20(b) funds should be liquidated and the funds dispersed" merely describes the consequences of a judgment in the SEG 1 Defendants' favor. *Id.* It is not a command to hold the Trustee's feet to the fire absent additional reasons.

Overall, FCStone directs most of its arguments at why this court *can* enter its requested relief, but offers little support for why the court *should*. (*See* FCStone, LLC's Reply in Favor of FCStone Mot. [326] ("FCStone Reply Br."), 9) (devoting a single page to explain why "the proposed orders are necessary at this time" and providing no legal support). FCStone is entitled to a judgment order on Count III of the Second Amended Complaint and nothing more. FCStone asserts that its "Proposed Orders merely provide for a suggested timetable to accomplish the Seventh Circuit's mandate," (*Id.* at 4), but from the court's perspective, the existing post-judgment procedures are perfectly adequate. *See* FED. R. CIV. P. 60 (Relief from a Judgment or Order), 69 (Execution).

Furthermore, the Plan itself establishes a timeline for distributions. As the Trustee points out, "Section 7.10 of the Plan governs *when* the Trustee will make distributions on account of 'Disputed Claims.'" (Trustee's Supplemental Objection to FCStone Mot. [330], 3) (emphasis in original). Section 7.10 states that distributions on account of "Disputed Claims" must be made "as soon as practicable after an order, judgment, decree or settlement . . . becomes a Final Order[.]" (Liquidation Plan § 7.10, 35.) The Plan defines "Final Orders" as an order or judgment for which "the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed, or, if filed, remains pending[.]" (Id. at § 1.1, 10.) The Trustee asserted that he intended to file a

9

petition for a writ of certiorari with the Supreme Court by January 2, 2018. (*See* Trustee's Supplemental Objection to FCStone Mot. 3.) That date has since been extended to February 1, 2018. (Letter Granting Extension of Time to File Petition for Writ of Certiorari of 12/20/17 [69] in *Grede v. FCStone, LLC*, No. 16-1896.) FCStone is entitled to judgment on Count III, but it must wait to see if the Supreme Court either denies certiorari or issues an opinion in the case before being entitled to recover.

FCStone, for its part, argues that the Reserve funds are not "Disputed Claims" within the meaning of Section 7.10, so it cannot control the timing of Reserve distributions. Instead, FCStone claims that Section 7.20(c)(i) controls due to the holding in *FCStone II* that the Reserves are property held in trust for customers. (FCStone's Response to Trustee's Supplemental Objection to FCStone Mot. [331] ("FCStone Sur-Response"), ¶¶ 5–6.) In the court's view, FCStone's reliance on this section is misplaced. Section 7.20 covers the "Resolution of the Property of the Estate Issues" and establishes the SEG 1–3 Reserves and the Section 7.20(b) Disputed Claims Reserve. Section 7.20 does not provide any indication as to when distributions of the Reserves should be made. The disputed passage states only that, after a determination that the Reserves are not property of the estate, "Customer Property shall be distributed to the rightful owners of such property or to the Estate, as determined by the Court." (Liquidation Plan § 7.20(c)(i), 40.) This language dictates to whom the distributions should be made, not when they should be made. It does not obviously contradict Section 7.10. Furthermore, even if Section 7.10 instructions to delay distributions until all avenues of appeal have been exhausted are inapplicable, Section 7.20(c)(i) clearly leaves the question of distribution to the court's reasonable discretion.

It appears that FCStone believes that once its property interest in the Reserves was established through litigation, it was removed from the Plan's purview. (FCStone Sur-Response ¶¶ 5–6.) But this argument makes little sense. At the time the Plan was made, all of the Reserve funds were "disputed." The Plan accordingly outlines a procedure for what do to once

those disputes end—in Section 7.10. A contextual reading of the Plan supports this view: in particular, the connection between the Section 7.20(b) *Disputed Claims* Reserve and the timeline established in Section 7.10 for the "Distribution of *Disputed Claims*."[4] Sections 4.4 and 4.5 regarding customer claims, which Section 7.20(c)(i) is said to modify in the event a claim is said to be "Customer Property," also use the language of "Disputed" or "Allowed Claims" to describe the distribution process. Since the Plan provides no directives on when to distribute funds later found to be "Customer Property" (despite that term's presence throughout the Plan and definition in Section 1.1), it appears clear to this court that property only determined to be "Customer Property" after a dispute still falls within the scope of Section 7.10's instruction to wait until that determination becomes a "Final Order."

Count III sought a judgment "declar[ing] that all of the cash held by the Trustee in accounts denominated as SEG 1, SEG 2, or SEG 3 accounts is property of the Debtor's estate under § 541 of the Bankruptcy Code." (FCStone Complaint 28.) A judgment in FCStone's favor on Count III simply declares that the property held in the Reserve accounts is trust property held for FCStone's benefit. The court therefore grants FCStone, LLC's Motion for Judgment on Count III [317], but declines to include the additional provisions suggested by FCStone. The Plan governs distributions of such funds, and the court is confident that the Trustee will not require additional arm-twisting before turning over funds to which no other party is entitled.

**2.   The SEG 1 Defendants: *Penson Financial Futures, Inc. and Penson Futures f/k/a Penson GHCO*, No. 09-cv-101; *Farr Financial, Inc.*, No. 09-cv-120; *Cadent Financial Services*, No. 09-cv-127; *Country Hedging Inc.*, No. 09-cv-130; *Velocity Futures, LP*, No. 09-cv-135; *American National Trading Corp.*, No. 09-cv-137; and *ABN AMRO Clearing Chicago LLC (f/k/a Fortis Clearing Americas, LLC)*, No. 09-cv-138**

The remaining SEG 1 Defendants have all moved for judgment in their favor based on the results of the test case. (*See, e.g.,* Penson Mot. 2–3.) The issues raised in their motions

---

[4] Section 7.11 ("Disputed Claims Reserve") also addresses the Section 7.20(b) Disputed Claims Reserve, and specifically states that "[n]o payments or distributions shall be made with respect to a claim which is a Disputed Claim pending the resolution of the dispute by Final Order." (Liquidation Plan § 7.11, 35.)

were identical, and the Trustee responded to all of the SEG 1 Defendants—apart from IFX Markets and IPGL, Ltd., which will be addressed in the following section—in a single, Omnibus Objection brief. (*See* Trustee's Omnibus Objection to Defendants' Motions for Entry of Judgment [71] in *Grede v. Penson*, No. 09-cv-101 ("Trustee's Omnibus Objection").) The SEG 1 Defendants assert that collateral estoppel binds the Trustee across all the SEG 1 cases. The Trustee does not dispute the binding nature of the *FCStone* test case. Nor are the Reserve accounts involved or the amounts due in question. As they did with respect to the form of judgment sought by Defendant FCStone, however, the parties have now asserted new issues as well.

One of the arguments can be easily rejected. The SEG 1 Defendants argue for the same additional judgment terms that FCStone sought to include: namely, the injunction requiring the Trustee to disperse the funds within one week, and an order retaining the district court's jurisdiction over future Reserve disputes. (Penson Mot. 11–12; The SEG 1 Defendants' Omnibus Reply in Support of their Motion for Entry of Judgment [72] in *Grede v. Penson*, No. 09-cv-101 ("Defendants' Omnibus Reply"), 8–11.)[5] For the same reasons discussed above, those requests are denied.

The Trustee, however, raises a unique issue against the SEG 1 Defendants. While recognizing the preclusive effect of the Seventh Circuit's two *FCStone* decisions in its other disputes, the Trustee claims that the stay order imposed by Judge Zagel in 2016 has not yet run its course, and will not expire until the Supreme Court acts in response to the Trustee's planned petition for a writ of certiorari. (Trustee's Omnibus Objection 1–2.) Alternatively, the Trustee

---

[5] The SEG 1 Defendants did not request the jurisdictional order in their original motions for entry of judgment. They did discuss of the appropriateness of such an order, however, in their Omnibus Reply when responding to the Trustee's arguments against expanded relief. (*See* Defendants' Omnibus Reply 10–11) ("It would thus be entirely proper for this Court to retain jurisdiction over any post-judgment disputes concerning the amount and timing of the Reserve distributions.")

urges the court to withhold judgment in these cases until the Supreme Court takes action in two other, unrelated lawsuits the Trustee believes could impact the SEG 1 cases.

The Trustee's argument that the stay remains in effect is without merit. This court has already permitted the parties to refile their motions. And regardless of whether the language of the stay contemplated a petition for a writ of certiorari or merely through direct appeal to the Seventh Circuit (the SEG 1 Defendants argue for the latter interpretation), the Seventh Circuit's instructions in *FCStone II* are clear: "FCStone and the other SEG 1 Objectors are entitled to share pro rata in the [ ] reserve[s]." *FCStone II*, 867 F.3d at 790.

Though the Trustee attempts to link the two in support of his position, Judge Zagel's stay order is independent of the Trustee's duty to disperse funds under the Plan. As discussed, the Plan states that *distributions* shall only be made once a claim is established by a Final Order—which involves the exhaustion of all avenues of appeal. (Liquidation Plan § 7.10, 35.) Entering *judgment* now will not run afoul of the Plan, nor force the Trustee to claw back funds in the event he is victorious before the Supreme Court. The Trustee argues that entering judgment now "will only result in forcing the Trustee to appeal every judgment that is entered to the Seventh Circuit in order to preserve his claims" in the event the Supreme Court reverses *FCStone II*. (Trustee's Omnibus Objection 2.) That may indeed be required, but this court is not at liberty to ignore the directions of the Court of Appeals.

The Trustee's alternative argument for delaying judgment warrants even less attention. As recognized by the SEG 1 Defendants, the Trustee has not met his burden of establishing why delay is proper here. (Defendants' Omnibus Reply 5.) The Supreme Court states:

> It is our settled practice to grant a stay only when three conditions are met: First, there must be a reasonable probability that certiorari will be granted (or probable jurisdiction noted). Second, there must be a significant possibility that the judgment below will be reversed. And third, assuming the applicant's position on the merits is correct, there must be a likelihood of irreparable harm if the judgment is not stayed.

*Philip Morris USA, Inc. v. Scott*, 131 S. Ct. 1, 3 (2010). This standard applies to the lower court that enters the judgment as well. *See* 28 U.S.C. § 2101(f) ("The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court[.]"). The Trustee urges that the SEG 1 Defendants would not be prejudiced if this court withholds judgment pending action by the Supreme Court (*see* Trustee's Omnibus Objection 6), but that is not the standard. The Trustee has failed to make a case for why *he himself* would be prejudiced if the court enters judgment at this time. Furthermore, the Trustee makes only bare assertions that Supreme Court is likely to rule in a way favorable to him in *Merit Management Group, LP v. FTI Consulting*, Case No. 16-784; or both grant certiorari and also rule favorably in either of *Deutsche Bank Trust Company Americas v. Robert McCormick Foundation*, Case No. 16-317, or his own case, *FCStone II*. SEG 1 Defendants have also raised serious questions about the relevance of *Merit Management* and *Deutsche Bank* to these proceedings. (Defendants' Omnibus Reply 5–8.) In short, the Trustee's seemingly endless string of "what ifs" does not provide a sound basis for delaying judgment.

The court will enter judgment in favor of the SEG 1 Defendants (apart from IFX Markets and IPGL, Ltd.) on Counts I–V of the Second Amended Complaint. In the case of the Penson Defendants, the court will enter judgment in their favor on Counts I–VII of the Second Amended Complaint.

3. *Grede v. IFX Markets, Inc. and IPGL, Ltd.*, No. 09-cv-115

Defendants IFX Markets, Inc. and IPGL, Ltd. ("the IFX Defendants") filed an essentially identical motion for judgment as the rest of the SEG 1 Defendants. (*See* IFX Markets, Inc.'s and IPGL, Ltd.'s Motion for Entry of Judgment [152] in *Grede v. IFX Markets*, No. 09-cv-115 ("IFX Mot.").) To the extent the IFX Defendants' motion raises the same issues and seeks the same, overly complex judgment order as the other SEG 1 Defendants, that request is denied. The same goes for the Trustee's desire to continue the stay on litigation in this case, as addressed above.

The Trustee, however, also objected to the IFX Defendants' motion for judgment on unique grounds: the Trustee claims that the *FCStone II* decision does not apply to the IFX Defendants' claim to the Reserves at all. (Trustee's Objection to IFX Mot. [156], 2.) Unlike the rest of the SEG 1 Defendants, the IFX Defendants' investments consisted of funds derived from foreign currency exchanges ("Forex"). (*Id.*) According to the Trustee, "assets relating to Forex trading are not entitled to *any* trust protection under the CEA [Commodities Exchange Act]" because Forex transactions are not "commodity contracts." (*Id.* at 2–3) (citing *In re Peregrine Fin. Group, Inc.*, 866 F.3d 775 (7th Cir. 2017)) (emphasis in original). Therefore, the Trustee concludes, "IFX has no property that it can assert belongs to it at the exclusion of other similarly-situated creditors" and is not entitled to judgment based on the test case. (*Id.* at 4.)

The Trustee bases his argument on a recent decision from the Seventh Circuit, *In re Peregrine Financial Group, Inc.*, 866 F.3d 775 (7th Cir. 2017), which affirmed a lower court decision holding that Forex funds are not "commodity contracts" within the definition of the CEA or regulations promulgated by the Commodity Futures Trading Commission ("CFTC"). *Id.* at 776. Like Sentinel, Peregrine was a futures commissions merchant ("FCM") that invested money for its clients until it too was brought down by executive malfeasance. *Id.* at 775. After it declared bankruptcy, Peregrine's customers sought the return of their funds, and, just as in the *FCStone* test case, fought with the trustee over whether certain funds should be treated as customer property or property of the estate. *In re Peregrine Fin. Group, Inc.*, 510 B.R. 190, 191 (Bankr. N.D. Ill. 2014). After examining the law and regulations surrounding different forms of investment property, the Bankruptcy Court determined that nothing in the CEA or CFTC regulations requires segregation of funds from customers trading in retail forex[.]" *Id.* at 201–02 ("Segregation of customer funds is the highest level of customer protection provided under the CEA and CFTC regulations. FCMs must treat customer funds as the property of the customer, not the FCM.") Such funds, the court found, were not statutorily protected as "'customer property' and do not get any special priority in bankruptcy." *Id.* The District Court and Seventh

15

Circuit both affirmed this decision and adopted the lower courts' opinions. *See Secure Leverage Group, Inc. v. Bodenstein*, 558 B.R. 226, 250 (N.D. Ill. 2016), *aff'd Peregrine*, 866 F.3d at 776 (affirming summary judgment in favor of the trustee).

The Defendants argue that *Peregrine* did not establish a blanket rule excluding Forex funds from statutory trust protection. (*See* IFX Markets, Inc. and IPGL, Ltd's Reply in Support of IFX Mot. [157] ("IFX Reply."), 8–9.) This argument is not convincing. While the District Court opinion did indeed acknowledge that the contracts in *Peregrine* gave the broker power to commingle investor's funds and use them for its own purposes—a key distinction between *Peregrine* and the contracts the SEG 1 Defendants signed with Sentinel—there is no support for IFX's proposition that the contractual language was the dispositive factor. *See Secure Leverage Group*, 558 B.R. at 238. Instead, the District Court observed that statutory trust protection was the critical question in the case *precisely because* no contractual protection existed:

> The Agreement, which was used with respect to all Peregrine accounts, does not define when funds in a customer account constitute customer property and when they do not.
>
> ***That*** question is answered not by the Agreement, but by reference to the statutory and regulatory context that governed the types of financial instruments Peregrine traded. The Agreement states that the parties "shall be bound by all applicable laws, rules, and regulations, including the commodity exchange act," and these laws shed light on what can reasonably be considered customer property under the Agreement. [Citation to record omitted.] The Commodities Exchange Act requires that futures accounts are segregated, which strongly indicates that equitable title to those futures is never transferred to the broker. See In re Dreier LLP, 544 B.R. 760, 769 (Bankr.S.D.N.Y.2016). Because title is never transferred, those futures contracts remain "customer property." Appellants' retail forex accounts, by contrast, are not required to be held in segregated accounts and could be comingled with other funds and used to pay Peregrine's liabilities.

*Id.* at 237–38 (emphasis in original). Furthermore, the Bankruptcy Court had noted earlier that the contractual language at issue simply echoed CFTC statements that warned Forex customers that the laws and regulations protecting customers trading in futures contracts did not apply to Forex transactions. *See Peregrine*, 510 B.R. at 201–02. The District Court's extended

discussion of the CEA's language and legislative history reinforces this point. *See Secure Leverage Group*, 558 B.R. at 239–43. Funds derived from Forex transactions do not fall within the statutory trusts created by the CEA and given priority under the Bankruptcy Code.

The Defendants also argue that, even if *Peregrine* does establish what the Trustee claims, the Trustee has waived his right to object to IFX's motion for entry of judgment by failing to raise this earlier on in litigation and by entering into stipulations that proactively waived most potential defenses. (IFX Reply 7, 11–13.) Neither of these attacks sway the court. First, none of the numerous cases IFX cites for the "law of the case" doctrine or the mandate rule are applicable here. (*Id.* at 7) (citing *United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014), and *United States v. Whitlow*, 740 F.3d 433, 438 (7th Cir. 2014), among other cases, for the proposition that issues that were decided or that could have been raised on appeal may not be revisited on remand). The *FCStone* test case never addressed whether or not Forex funds qualified for statutory trust protection. The Seventh Circuit may have held that "the funds in the SEG 1 Reserve account are trust property belong to FCStone and other SEG 1 Objectors," *FCStone II*, 867 F.3d at 779, but that is only because it—and the litigants—were still under the impression that all of the SEG 1 Defendants were, in fact, similarly situated. Furthermore, contrary to IFX's assertion that the Trustee knew about *Peregrine* for "months" yet did nothing, (IFX Reply 8), the Trustee could not have raised this issue before. Grede's action against IFX was stayed by Judge Zagel's order until recently, and the Seventh Circuit decided *Peregrine* just one week before it decided *FCStone II*. The controlling authority did not exist throughout most of this litigation, so earlier missed "opportunities" (such as the Trustee's failure to raise it as an issue unique to the IFX case in a hearing on May 17, 2017) are not relevant. (*See* IFX Reply 6 n.2; Transcript of Proceedings, Ex. L to IFX Reply [157-6], 7:12–28:14.) The Trustee appears to have acted prudently. He raised it in the first motion he could, and in the proper context: against the lone SEG 1 Defendant to whom the defense applied.

IFX's appeals to the stipulations signed by the Trustee in August 2010 are also misguided. (IFX Reply 12; Stipulation and Order Fixing Amount of Claim Nos. 154, 156, and 164, Ex. N to IFX Reply [157-8] "Stipulations").) IFX claims that it and the Trustee entered into three stipulations "so as to avoid '[unnecessary costs] and expenses associated with *any* litigation pertaining to the Claim.'" (IFX Reply 12) (quoting Stipulations 2) (alterations in original). IFX reads too much into these documents. The Stipulations merely "calculate and fix the claims in an amount consistent with the terms of the Plan." (Stipulations 2.) IFX argues that "[n]othing in the stipulations permits the Trustee to challenge [IFX's] assertion that [IFX's funds were held in trust]," but nothing in the Stipulations stops the Trustee from doing so either. (IFX Reply 12.) In the end, the Stipulations are irrelevant to this dispute. Judge Zagel already rejected a similar argument advanced by Defendant FCStone in the test case, stating that the Stipulations themselves even included language that they were to "'have no effect on' nor 'be admissible or constitute evidence' in this lawsuit." *Grede v. FCStone, LLC*, No. 09-cv-136, 2012 WL 3263986, at *4 (N.D. Ill. Aug. 9, 2012) (quoting Stipulations ¶ 5).

Finally, IFX asserts that its funds are nevertheless protected by "an express written trust" per the terms of its investment agreements with Sentinel. (IFX Reply 1, 9–11.) This begs the question that this litigation must answer. *FCStone II* held that the SEG 1 Defendants whose funds were protected by statutory trusts are entitled to recover their *pro rata* portions of the Reserves based on the Defendants' abilities to trace their initial investments to those Reserves. *FCStone II*, 867 F.3d at 779. These trusts were established by the requirements of the CEA, and the tracing fictions adopted by the Seventh Circuit apply only to those protected funds. Without those statutory trusts, the issues of dueling trusts and trust priority that led to the second *FCStone* appeal resurface. Because the Trustee argues—and *Peregrine* clearly states—that IFX is *not* entitled to that same trust protection, it would be improper for this court to grant judgment based on the test case.

18

The SEG 1 Defendants all relied on the doctrine of collateral estoppel in filing their motions for judgment. But if the issues addressed are not truly identical, then collateral estoppel does not apply to bind the Trustee in this dispute. See *Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (describing the elements of collateral estoppel). By using its reply brief to argue for the existence of an express written trust under Illinois state law, IFX sends a clear signal that additional proceedings are required. (*See id.*) For his part, the Trustee admits that IFX may well be protected by an express written trust, but notes that IFX still must establish that fact "after discovery and a trial or summary judgment proceedings." (Trustee's Sur-Reply to IFX Mot. [160] in No. 09-cv-115 ("Trustee's Sur-Reply"), 3.) The *Peregrine* case does not prove that IFX cannot establish a trust at all; it does, however, establish that IFX cannot establish a statutory trust in the same fashion as its fellow SEG 1 Defendants, which renders judgment on Count III inappropriate at this time.

IFX Markets, Inc. and IPGL, Ltd.'s Motion for Judgment [152] on Count III of the Second Amended Complaint is denied. The Defendants' Motion for Judgment [152] on remaining Counts I, II, IV, and V is granted.

## **CONCLUSION**

Defendant FCStone, LLC's motion for entry of judgment on count III [317 in No. 09-cv-136] is granted. The remaining SEG 1 Defendants' motions for entry of judgment are granted on all counts in the following cases: *Grede v. Penson Financial Futures, Inc. and Penson Futures f/k/a Penson GHCO* [65 in No. 09-cv-101]; *Grede v. Farr Financial, Inc.* [152 in No. 09-cv-120]; *Grede v. Cadent Financial Services* [160 in No. 09-cv-127]; *Grede v. Country Hedging, Inc.* [152 in No. 09-cv-130]; *Grede v. Velocity Futures, LP* [168 in No. 09-cv-135]; *Grede v. American National Trading Corp.* [171 in No. 09-cv-137]; and *Grede v. ABN AMRO Clearing Chicago LLC f/k/a Fortis Clearing Americas, LLC* [176 in No. 09-cv-138]. IFX Markets, Inc. and IPGL, Ltd.'s motion for entry of judgment [152 in No. 09-cv-115] is granted on counts I, II, IV, and V; but denied on count III.

The Trustee is directed to submit forms of judgment for each of the pending cases, consistent with this court's opinion, within seven days.

ENTER:

Dated: January 23, 2018

_____
REBECCA R. PALLMEYER
United States District Judge